UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES I. WYNN, SR.,

                     Plaintiff,                            22-CV-6354 (CJS)

vs

GERDA B. CASSARA, GEORGE
M. REIBER, ESQ., Chapter 13
Trustee, WILLIAM RIETH, ESQ.
for Bankruptcy, AMERICAN TAX
FUNDING LLC, CHESWOLD (TL)
LLC, TOWER DBW II TRUST 2012-1,
and MARK UPDEGRAFF aka
WARD REDUX LLC,

                     Defendants.
_____

INTRODUCTION

On August 22, 2022, James I. Wynn, Sr. ("Plaintiff"), proceeding *pro se*, filed four lawsuits, including the subject action, and paid the filing fee. The four actions were: 22-CV-6352 CJS, *Wynn v. Larimer*, et al.; 22-CV-6353 CJS, *Wynn v. Cassara, et al.*; 22-CV-6354 CJS, *Wynn v. Cassara, et al.*; and 22-CV-6355, *Wynn v. Larimer, et al.*[1] All four actions involve the same allegation, namely, that Plaintiff was cheated out of piece of real estate by a large group of racist conspirators.[2] This Court has already dismissed two of the aforementioned four actions, 22-CV-6352 CJS, *Wynn v. Larimer* and 22-CV-6355 CJS *Wynn v Larimer*, for failure to state a claim. Now before the Court are the following

---

[1] A few days after that, Plaintiff filed a fifth action, 22-CV-6362, *Wynn v. Warren et al*.
[2] In reality, however, Plaintiff lost the property through foreclosure after he failed to pay his property taxes and then failed to abide by a Chapter 13 Bankruptcy Plan. *See, generally, Wynn v. Phillips Lytle LLP, et al.*, 22-CV-6352 (CJS), Decision and Order dated February 22, 2023.

1

motions to dismiss the instant Complaint for failure to state a claim: A motion by Mark Updegraff ("Updegraff"), ECF No. 14; and a motion by American Tax Funding LLC ("ATF"), Cheswold (TL) LLC ("Cheswold"), and Tower DBW II Trust 2012-1 ("Tower") (collectively "the ATF Defendants").  For the reasons discussed below the unopposed motions to dismiss are granted, the remaining claims are dismissed *sua sponte* as frivolous and vexatious, and Plaintiff is enjoined from filing any additional actions or claims involving the subject matter of this action without the Court's prior approval.

BACKGROUND

The lawsuits filed by Plaintiff on August 22, 2022, all allege that Plaintiff was the victim of an "illegal foreclosure."[3]  The Complaint in this action (ECF No. 1) refers to an attached "Verified Complaint," but there is no such attachment.  However, Plaintiff filed a "Verified Complaint" in related action 22-CV-6355 CJS, ECF No. 1-1, which appears to be the attachment to which the Complaint refers.[4]  The gist of the pleading is that Plaintiff lost ownership of certain real estate through foreclosure following a failed attempt to avoid foreclosure through bankruptcy, and that Plaintiff blames the events leading to the

---

[3] Complaint at p. 1.  Plaintiff filed the action using a 7-page form complaint for filing civil actions in federal court.  When asked to state the basis for federal jurisdiction, Plaintiff wrote: "Plaintiff and Defendant reside in Monroe County."  When asked to state the "nature of the suit," Plaintiff wrote: "Illegal foreclosure of property at 3840 Lave Ave. [illegible] order of foreclosure and sale had expired also Plaintiff was still under the protection of the Chapter 7 bankruptcy stay statutes.  Scam was also meant to force Plaintiff into bankruptcy to avoid summary order by the Court of Appeals for the Second Circuit mandate dated November 22, 2019.  This was racist + criminal."

[4] In ruling upon the subject motions to dismiss, the Court has considered the Complaint, the "Verified Complaint," and other documents of which the Court can take judicial notice, including Plaintiff's Bankruptcy Court records. *See, e.g., Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) ("[I]n ruling on a motion to dismiss, a court is not limited to the factual allegations of the complaint but may consider "documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). Therefore, in considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court. *See, e.g., Ambase*, 326 F.3d at 72–73; *Hackett v. Storey*, 2003 WL 23100328, at *2 (D.Conn.2003)"), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).

foreclosure sale on a racist conspiracy involving lenders, attorneys, state and federal judges, the Chapter 13 Trustee, the foreclosure referee, the purchaser at the foreclosure sale, the Mayor of Rochester, and the County Executive of Monroe County.

More specifically, this action primarily pertains to 3840 Lake Avenue in Rochester, New York,[5] which was formerly owned by Plaintiff, but was sold at a foreclosure sale on April 11, 2022.  In or about 2013, American Tax Funding, which had purchased $55,000.00 in tax liens on the property from Monroe County, commenced an action in New York State Supreme Court, Monroe County, to foreclose the liens.  American Tax Funding was represented in the foreclosure action by its counsel, Phillips Lytle, LLP ("Phillips Lytle.").

Seeking to avoid the foreclosure, Plaintiff considered filing a Chapter 13 Bankruptcy action and retained an attorney, William Rieth ("Rieth"), for that purpose. Alternatively, Plaintiff also considered taking out a loan to pay the debt, and mentioned to Rieth that he had applied for a loan from a particular lender.  However, Plaintiff was not granted the loan, and he suspects that Rieth persuaded the lender to deny the loan application.  In that regard, Plaintiff, who is black, speculates that Rieth was motivated by racial animus and a desire to obtain Plaintiff's property for himself.[6]

Nevertheless, Plaintiff continued to retain Rieth to file a Chapter 13 bankruptcy petition.  However, according to the Complaint, Rieth "intentionally sabotaged [Plaintiff's] bankruptcy plan so [that he] would lose everything that [he] owned."   Meanwhile,

---

[5] This was a rental property, not Plaintiff's primary residence.
[6] Plaintiff's oft-repeated mantra throughout his submissions is, in sum and substance, that everything done to him is because he is "82 years old and an African American male." Verified Compl. at ¶ 1. However, Plaintiff has not proffered a shred of evidence that Rieth actually influenced the lender, or that he was interested in obtaining Plaintiff's property.

Bankruptcy Court records indicate that Plaintiff's Chapter 13 bankruptcy failed because he did not comply with the court-ordered plan. More specifically, for reasons that are unclear, Plaintiff insisted that the Bankruptcy Court ought to allow him to sell the property free and clear of the existing liens. In any event, Rieth withdrew from representing Plaintiff. Plaintiff reportedly attempted to retain other attorneys to represent him in the bankruptcy matter, but was unable to do so, which he also attributes to a conspiracy against him.

The Honorable Paul Warren, U.S. Bankruptcy Judge, eventually converted Plaintiff's Chapter 13 to a Chapter 7 liquidation, due to Plaintiff's failure to comply with the Chapter 13 Plan. Notably, when doing so, Judge Warren pointed out, in a Decision and Order dated July 27, 2017, that Plaintiff's persistent allegations of a racist conspiracy against him, which are the same allegations asserted in this action, were "delusional" and "lacking a foundation rooted in reality":

> The Court has had numerous opportunities to assess Mr. Wynn's cognitive skills and his overall ability to understand the bankruptcy process. He has, since just days after filing this case, persisted in his claim that he is the target of a racially motivated conspiracy, designed to deprive him of his real estate. That view – which appears to the Court to be delusional—likely caused the withdrawal of two experienced attorneys who attempted to represent Mr. Wynn in this case. Both attorneys also noted that Mr. Wynn refused to take their legal advice. Even a cursory reading of Mr. Wynn's many submissions demonstrates that Mr. Wynn's beliefs are so firmly held, but lacking in a foundation rooted in reality, that it is highly unlikely he could ever change his focus and move this case forward.

ECF No. 23-9 at pp. 15-16. Plaintiff appealed aspects of the bankruptcy proceeding to the Honorable David Larimer, Senior U.S. District Judge, who affirmed Judge Warren's rulings. Plaintiff also filed numerous unsuccessful appeals to the United States Court of Appeals for the Second Circuit.

Eventually New York State Supreme Court, Monroe County, issued a Judgment of Foreclosure and Sale for 3840 Lake Avenue. In April 2022, the court-appointed foreclosure referee conducted the public sale, and Mark Updegraff ("Updegraff") purchased the property.

On August 22, 2022, Plaintiff filed the subject action proceeding *pro se*, suing a subset of the larger group of persons connected to the bankruptcy and foreclosure proceedings, including attorney Rieth, American Tax Funding, and Updegraff.  The Complaint alleges that Rieth is the "bankruptcy racist attorney behind this," who conspired with Judges Warren and Larimer; that American Tax Funding "was supposed to be the owner [of an] expired judgment"; and that Updegraff was "part and enforcer of the scam."

Additionally, Plaintiff sues Gerda Cassara ("Cassara"), a former mortgage holder on the property, who, according to the Complaint, "committed a crime when [she] foreclosed on [Plaintiff's] property."  The Complaint further asserts that Cassara somehow "used" American Tax Funding.  (Plaintiff also named Cassara and Updegraff as defendants in 22-CV-6352 CJS).

Plaintiff also sues Chapter 13 Trustee George Reiber ("Reiber"), but does not specify any particular alleged misconduct by him.  Presumably, though, Plaintiff believes that Reiber was also part of the conspiracy against him.

Plaintiff further sues Cheswold, alleging that it "lied and conspired with" Phillips Lytle in connection with bankruptcy proceedings, and also "scammed" with the City of Rochester and American Tax Funding.  Evidently, these assertions relate to a separate foreclosure, on a different piece of property formerly owned by Plaintiff at 38-40 Elmdorf

5

Avenue in Rochester, to which Cheswold, which owned tax liens on the property, was a party.

Finally, Plaintiff sues Tower, accusing it of involvement in "dirty tort claims for [the] County of Monroe," apparently referring to the aforementioned foreclosure actions.

The Complaint baldly alleges a wide-ranging, racially-based conspiracy against Plaintiff beginning with Rieth's alleged attempt to sabotage Plaintiff, and followed by Judges Warren and Larimer's alleged attempts during the bankruptcy proceedings "to cover up for the biased discriminating [by] William Rieth" and permit the foreclosure action to proceed.[7] The Complaint alleges that Plaintiff should have been allowed to sell the property and avoid the foreclosure, but Judges Warren and Larimer "refused to allow [him] to sell the properties because it would expose the racist thing that William Rieth had done." The Complaint further baldly asserts that the other Defendants were active participants in the conspiracy. The Complaint offers no facts whatsoever to support the naked assertion that either of the aforementioned foreclosures resulted from a racist conspiracy.

On November 8, 2022, Updegraff filed the subject motion (ECF No. 14) to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Updegraff contends that Plaintiff's claims allege civil rights violations under 42 U.S.C. § 1983,[8] and that Updegraff cannot be liable thereunder since he is a private citizen who never acted under color of state law. More generally, Updegraff contends that Plaintiff's factual assertions about the

---

[7] *See*, Plaintiff's Chapter 7 proceeding, *In re Wynn*, 13-20304, W.D.N.Y.
[8] *See, e.g.*, ECF No. 14-1 at p. 3 ("Plaintiff's claims appear to sound as claims made under the Due Process and Equal Protection Clauses of the Fourteenth Amendment in as much as Plaintiff is asserting that the was deprived of the Property without due process of law because of his race.") (The reader is advised that the page numbers assigned by the ECF case-filing system may not correspond to the page numbers in the original document).

6

foreclosure being the result of a racist conspiracy are not only entirely speculative, but also frivolous and demonstrably false, since Plaintiff admittedly had failed to pay the property taxes on the subject parcel.[9]

On December 2, 2022, Plaintiff filed an application that was docketed as a Motion for Miscellaneous Relief, ECF No. 22, requesting, among other things, a 60-day extension of time to retain counsel, and permission "to sue for legal fees for counsel and out of pocket expenses."

On December 6, 2022, the ATF Defendants filed a combined motion (ECF No. 23) to dismiss the Complaint and to enjoin Plaintiff from filing further actions related to the foreclosure without the Court's permission.[10]  The ATF Defendants contend, in that regard, that Plaintiff's assertions fail to plead plausible actionable claims, and are also barred by the doctrines of *res judicata* and/or collateral estoppel inasmuch as the foreclosure and bankruptcy issues have already been litigated on the merits.  Regarding *res judicata* and collateral estoppel, for example, the ATF Defendants point out that they obtained valid judgments of foreclosure on the merits in state court, and that Bankruptcy Court already rejected Plaintiff's claims concerning a conspiracy against him.[11]  According to these movants, this Court

---

[9] *See, e.g.*, ECF No. 14-1 at p. 11 ("Plaintiff fails to assert any facts supporting his constitutional claims against Updegraff. Critically, aside from vague and conclusory statements, Plaintiff asserts that Updegraff deprived him of his civil rights, due process and Constitutional rights, when Updegraff purchased the Property at the Foreclosure Sale. Although Plaintiff alleges a form of conspiracy between Updegraff and the other defendants, he offers no evidence describing the details of such a conspiracy."); *see also, id*. at pp. 14-15 ("Here, Plaintiff's claims are devoid of any rational basis for belief, and are the product of Plaintiff's delusions and fantasy, leaving no reason to liberally construe and interpret Plaintiff's claims as valid claims against Updegraff. Therefore, the Complaint should be dismissed with prejudice.").
[10] The application notes that American Tax Funding and Tower were involved in the foreclosure action concerning 3840 Lake Avenue, but that Cheswold was not, but was involved in the foreclosure action (also foreclosure of tax liens) on property at 38-40 Elmdorf Avenue.
[11] *See, e.g.,* ECF No. 23-15 at pp. 24-25 ("[T]he issues currently raised in the instant complaint, alleging a "scam" and "conspiracy" are identical to the issues addressed by the Bankruptcy Court when handling both the 3840 Lake Avenue and 38-40 Elmdorf Avenue properties. Exh. 8. The Bankruptcy Court

is presented with two issues: a vexatious litigant and 'claims' that have already been disposed of in previous actions or are otherwise completely devoid of merit. [Plaintiff's] Complaint fails to make factual allegations substantiating any claims. As a result, Plaintiff's alleged claims are so wholly insubstantial and implausible that they warrant complete dismissal.

ECF No. 23-15 at p. 8. Concerning their request for a filing injunction, those movants further observe, in pertinent part, that,

Plaintiff has already brought eight separate actions—four in this Court, and four in Monroe County, Supreme Court— all relating to the underlying foreclosure actions on the properties. Each of the Complaints names some incoherent combination of defendants that were somehow involved in the foreclosure actions. Moreover, each action is based on the same meritless allegation that the defendants were all involved in a "reckless and lawless conspiracy" to deprive Plaintiff of his property.

ECF No. 23-15 at p. 26; *see also, id*. at p. 27-28 ("Plaintiff does not have an objectively good faith expectation of prevailing in this litigation. . . . Plaintiff will continue to abuse the judicial system until those courts where he is permitted to litigate declare him a vexatious litigant and enjoin him from filing new actions without pre-approval.").

On December 16, 2022, the Court issued an order (ECF No. 25) granting Plaintiff's application for miscellaneous relief (ECF No. 22) in part, by directing that Plaintiff could have until February 13, 2023, to respond to the pending motions to dismiss. However, Plaintiff never responded to Defendants' motions, leaving them unopposed.[12]

## DISCUSSION

Plaintiff's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court must construe his submissions

---

explicitly disposed of these claims already, asserting that such claims 'have no basis in fact' are 'delusional and 'lack[] . . . a foundation rooted in reality.'").

[12] The Court has heard nothing from Plaintiff concerning this action since his last submission herein on December 2, 2022, more than five months ago.

liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>Standards Applicable to Motions Under Rule 12(b)(6)</u>

The movants seek dismissal of the Complaint pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6)[13] and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

---

[13] The ATF Defendants also argue that the Complaint should be dismissed for improper service, and that Plaintiff's claims are barred by *res judicata* and collateral estoppel.  The Court has little doubt that they are correct on those points.  However, to keep things simple, the Court will focus on the fact that the Complaint fails to state any plausible claim.

9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL

5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may establish the portion of the purchase price allocated to Movant shares. . . . But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

It is well settled that "Complaints containing "only conclusory, vague, or general allegations that the defendants engaged in a conspiracy fail to state a claim." *Eldars v. State Univ. of New York at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)); *see also, Brady v. IGS Realty Co. L.P.*, No. 20-3512, 2021 WL 4302737, at *2 (2d Cir. Sept. 22, 2021) ("Brady's complaint . . . vaguely references a "civil conspiracy" without any facts supporting a meeting of the minds or alleging discriminatory animus.  His allegations of an effort by a state-court justice and both parties' attorneys to undermine his litigation do not state a claim for relief that is 'plausible on its face.' *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.").

<u>The Complaint Fails to Plausibly State Any Actionable Claim or Wrongdoing by Any Defendant</u>

Liberally construing Plaintiff's Complaint, it appears Plaintiff is attempting to plead a conspiracy to violate his civil rights under 42 U.S.C. § 1985(3).  "[A]n action will lie under § 1985(3) when a plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir. 1985) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971)).

Here, however, Plaintiff's factual allegations concerning the alleged conspiracy to steal his real estate are so utterly conclusory, speculative, paranoid and implausible as to be "clearly baseless" and "frivolous."[14]  The bald contention that Rieth sabotaged Plaintiff's efforts to salvage his property, and that the other defendants then conspired to cover up Rieth's wrongdoing, all supposedly because of a shared desire to racially discriminate against Plaintiff, is exactly the type of implausible claim that should be dismissed under the *Twombly* standard. *See, e.g.*, Verified Complaint, filed in 22-CV-6355 CJS, ECF No. 1-2 at ¶ 12 ("[T]he Bankruptcy Docket and the District Court Docket will also tell you what happened in this case.  Plaintiff learned fast that this was not about taxes.  It was more about racial discrimination and taking away everything you could from this black elderly man."); *see also*, *id*. at ¶ 16 ("Judge Warren and Judge Larimer made

---

[14] In the Bankruptcy Court Decision and Order issued by Judge Warren on July 27, 2017, mentioned earlier, Judge Warren observed that Plaintiff's "allegations of a conspiracy against him, while doubtlessly genuine in his eyes, have no basis in fact, and no evidence is offered in support." ECF No. 11-8 at p. 3; *see also, id*. at p. 5 (Referring to Plaintiff having alleged in the Bankruptcy Action "a grand conspiracy orchestrated to cause Mr. Wynn to lose title to his real estate holdings."); *id*. at p. 9 (Noting that Plaintiff had "doubled down on is assertion that the entire case has been a calculated, racially motivated conspiracy to deprive him of title to his real estate holdings.").

sure they used their authority as a judge to not expose a racist individual."); ¶ 22 ("I felt Judge Larimer and Judge Warren had a lot to do with Plaintiff not getting honest legal representation."); ¶ 23 ("If I had to guess, I would say Judge Warren, William Rieth, George Rieber and Judge Larimer had something to do with John Warner not representing me."); ¶ 25 ("Gerda B. Cassara foreclose[ed] on my property at 3840 Lake Avenue. . . . Only Judge Larimer and Judge Warren could get the Court and City of Rochester and others to falsify their records to go along with a criminal act such as this."); ¶ 28 ("Plaintiff is not surprised that Gerda Cassara would conspire with Judge Warren and Judge Larimer and pull an illegal criminal stunt such as this because even though her mother was a wonderful lady, Gerda Cassara is a racist biased discriminating back-stabbing lady."); ¶ 30 ("The fact remains that even though Judge Warren has signed the Chapter 7 Discharge on November 26, 2019, it was also meant to be a trap for the Plaintiff to force Plaintiff back into bankruptcy . . . . How is Judge Warren being a judge in bankruptcy court conspiring with others to violate the same statutes he swore to uphold? This is like the fox guarding the hen house.").

Because the Complaint so clearly fails to plausibly state any actionable claim, the Court need not address the additional particular grounds for dismissal raised by Defendants' motions. The movants' applications are granted. Additionally, for those same reasons, the Court also *sua sponte* dismisses the claims against the non-moving defendants, since, again, the action is clearly so frivolous, vexatious, and duplicative, that its ultimate dismissal is a foregone conclusion.[15]

---

[15] Federal District Courts do not generally conduct *sua sponte* reviews of actions in which the plaintiff has paid the filing fee. Nevertheless, "[a] district court has inherent authority to dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee. . . . An action is considered "frivolous" when: (1) the factual contentions are clearly baseless, such as when allegations are the product of

13

Leave to Amend is Denied

Plaintiff never responded to Defendants' motions, and therefore has not requested leave to amend in the event the Court were to grant Defendants' motions.  Ordinarily, though, a court will not dismiss a *pro se* complaint without giving the plaintiff a chance to amend.  Here, however, the Court declines to give Plaintiff an opportunity to amend since it would be futile to do so for the reasons already discussed.  Namely, Plaintiff's allegations are so conclusory, far-fetched, and unreasonable, that no amount of additional pleading would result in an actionable claim. *See, Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. May 17, 2018) ("Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated.  But, here, amendment would be futile, as there is no indication that Hariprasad might plead a valid claim[.]"); *see also, Maunsell v. WCAX TV*, 477 F. App'x 845, 846 (2d Cir. 2012) ("[Plaintiff's] conclusory assertions of statewide judicial bias were insufficient to state a claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).").

The Request by American Tax Funding, Cheswold and Tower
for a Filing Sanction

The ATF Defendants have requested that the Court impose a filing sanction on Plaintiff, and, more specifically, that the Court declare Plaintiff to be a vexatious litigant and enjoin him from filing any further actions or "claims that arise from the foreclosure and sale of his property located at 3840 Lake Avenue and 38-40 Elmdorf Avenue" without

---

delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Hariprasad v. New York*, 722 F. App'x 102, (Mem)–103 (2d Cir. May 17, 2018) (citations and internal quotation marks omitted).

14

the Court's prior approval. The Court will grant that application since it is clear that Plaintiff is indeed a vexatious litigant who will not be deterred by any lesser sanction.[16]

In that regard, the Court notes that it already analyzed this same issue in its recent decision dismissing related case number 22-CV-6352 CJS, *Wynn v. Phillips Lytle, et al.*, ECF No. 35, at pp. 15-19. In that Decision and Order, which the Court incorporates herein by reference, the Court ordered Plaintiff to show cause in writing, within thirty days, why the Court should not impose a filing sanction on him, preventing him from filing any additional actions or claims relating to matters raised in that lawsuit, which are the same matters raised in this lawsuit.[17] Plaintiff never responded to that Order, and the Court will be entering an order imposing such a filing sanction in that action, contemporaneous with the issuance of this Decision and Order.

## CONCLUSION

Defendants' motions to dismiss (ECF Nos. 14 & 23) are granted. The Complaint clearly fails to state an actionable claim against any Defendant, including any non-moving defendant, and is dismissed with prejudice. The Clerk of the Court is directed to terminate this action.

Additionally, James I. Wynn, Sr., is hereby barred and enjoined from filing any additional actions or asserting any new claims in already pending actions relating to the subject matter of this action, without first obtaining written approval from the undersigned.

---

[16] The four actions filed on August 22, 2022, were just the latest salvo by Mr. Wynn, who, since 1992, has filed seventeen civil actions in this Court, along with fifteen bankruptcy-related appeals, many of which involve the same matters as the instant action. These figures are based on a search of the Court's CM/ECF electronic docketing system performed on May 17, 2023. A similar search of the Second Circuit's CM/ECF system indicates that Plaintiff is a party to thirty-two appeals filed since 2014.

[17] Although case number 22-CV-6352 CJS did not expressly reference Cheswold, Tower or 38-40 Elmdorf Avenue, the lawsuits are inextricably intertwined and overlapping. Consequently, the filing sanction in this action will encompass any new actions or claims relating to the foreclosure proceedings on both 3840 Lake Avenue and 38-40 Elmdorf Avenue.

Specifically, such filing sanction applies to <u>any</u> action or claim relating to 3840 Lake Avenue or 38-40 Elmdorf Avenue in Rochester, New York.  This includes, without limitation, any action or claim relating to the foreclosures of Plaintiff's ownership interests in such properties, or to Plaintiff's continuing claims of ownership in such properties, or to any related bankruptcy proceedings.  The Clerk of the Court is directed to notify the undersigned if Plaintiff attempts to file such an action or claim.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438 (1962).

SO ORDERED.

DATED:   May 24, 2023
         Rochester, New York

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge